**JACOBSON LAW FIRM**
570 N. Columbus Blvd., Suite B
Tucson, Arizona 85711
Telephone (520) 834-8034
Facsimile (520) 844-1011
jeff@jacobsonlawfirm.net
Jeffrey H. Jacobson, State Bar No.: 019502
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Page,<br><br>                Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas, in his official capacity as Secretary, U.S. Department of Homeland Security,<br><br>                Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

For his Complaint against Defendant, Plaintiff, through counsel, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      For all times relevant to this Complaint, Plaintiff Michael Page is a male with a disability (alcohol dependence and post traumatic stress disorder), domiciled in Pima County, and a former employee of the Defendant, United States Department of Homeland Security (DHS), United States Customs and Border Protection, United States Border Patrol (USBP) (collectively "Agency").

2.      Plaintiff is a protected person within the meaning of 42 U.S.C. § 2000e-2 and Section 501 of the Rehabilitation Act of 1973.

3.      DHS is an agency of the executive branch of the United States government.

1

4. Alejandro Mayorkas is the DHS Secretary and is an appropriate defendant in this action, in his official capacity, pursuant to 42 U.S.C. § 2000e-16(c).

5. The events and actions complained of below occurred in Pima and Santa Cruz Counties, Arizona.

6. At all relevant times, Defendant was a covered employer under Title VII of the Civil Rights Act of 1964 (Title VII) and employed Plaintiff.

7. This Court has jurisdiction over the Agency's discriminatory removal pursuant to 5 U.S.C. §§ 7702 and 7703 and 29 C.F.R. § 1614.310(h), and over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(3) because this is an action alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

8. This Court has personal jurisdiction over Defendant Alejandro Mayorkas in his official capacity, because, at all times relevant, Plaintiff worked for Defendant in Pima and Santa Cruz Counties, Arizona.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because it is where the events or omissions giving rise to the cause of action occurred.

10. This is a "mixed case" in which Plaintiff will challenge the Agency's removal which involved discrimination and non-discrimination claims. *See* 29 C.F.R. § 1614.302(a)(1) (defining "mixed case complaint" as a complaint of employment discrimination in which the complainant may also raise allegations that the U.S. Merit Systems Protection Board has jurisdiction to address).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff made initial contact with the Agency's Equal Employment Opportunity (EEO) office on February 15, 2022.

12. Plaintiff received his Notice of Right to File a Discrimination Complaint on March 17, 2022.

13. On March 23, 2022, Plaintiff filed his formal complaint of discrimination. That matter was eventually designated as EEOC case number 540-2023-00177X.

14. On April 11, 2022, the Agency acknowledged receipt of Plaintiff's formal complaint of discrimination.

15. On October 20, 2022, the Agency issued an acceptance letter.

16. On November 3, 2022, the Agency issued a revised acceptance letter.

17. On April 17, 2023, the Agency determined that because the allegation in Plaintiff's formal complaint of discrimination constituted a "mixed case complaint," Plaintiff did not have a right to request a hearing before an EEOC Administrative Judge.

18. On May 31, 2023, the Agency issued its Final Agency Decision (FAD). The FAD notified Plaintiff that he had a right to either appeal the decision to the Merit Systems Protection Board (MSPB) or file a civil action in United States District Court.

## GENERAL ALLEGATIONS

19. Plaintiff began his career as federal law enforcement officer in April 2000.

20. In October 2000, while still a Border Patrol Agent trainee, Plaintiff was shot in the line of duty in Yuma, Arizona.

21. The morning after the shooting (which occurred in the evening), the Agency

(at the time, INS) ordered Plaintiff to report to work to meet the FBI where he was questioned and second guessed, despite the fact that he was ambushed by a sniper.

22. Plaintiff was also told that his career was up in the air, and the Agency was not sure if Plaintiff would pass his upcoming exams based on the incident.

23. Plaintiff joined the Federal Air Marshal Service in April 2002, where he served as a Civil Aviation Security Specialist/Federal Air Marshal until March 2007.

24. In March 2007, Plaintiff returned to Border Patrol. He was subsequently promoted several times to Supervisory Border Patrol Agent, Field Operations Supervisor, and Special Operations Supervisor.

25. On April 2, 2016, Plaintiff was involved in a single car accident without injuries during which he damaged his own vehicle and other private property.

26. On May 6, 2016, Plaintiff graduated from Station House Retreat in Boynton Beach, Florida, an in-patient rehabilitation program for first responders.

27. In a June 8, 2016, memorandum to then-Tucson Sector Chief Patrol Agent Paul Beeson, submitted through the chain of command beginning with Deputy Patrol Agent in Charge (DPAIC) Kevin Hecht, Plaintiff disclosed that he was dealing with depression, alcohol consumption, and PTSD, and that he had enrolled in the Station House Retreat program.

28. On August 5, 2016, Plaintiff submitted a memorandum to Chief Patrol Agent Beeson updating him on the April 2016 incident and his alcohol dependence recovery efforts.

29. On October 20, 2016, Plaintiff disclosed to the Agency that he had attended a 30-day in-patient rehabilitation program for alcohol dependence, participated in 32 3-hour

intensive out-patient sessions, four days per week, nine 3-hour sessions at Desert Star aftercare (a co-occurring intensive outpatient program), five sessions with a private counselor specifically for alcohol related issues, and private therapy.

30. In June 2020, Plaintiff attended another in-patient program at America's Rehab campus in Tucson, Arizona.

31. On November 3, 2020, Plaintiff reported for an Agency-ordered Fitness for Duty Examination at MBI Occupational Healthcare in Tucson, Arizona.

32. On November 5, 2020, Pamela Adams, M.D., noted in her Medical Examination Review Form that Plaintiff reported "PTSD after being shot on the job."

33. On January 7, 2021, Barry Morenz, M.D., diagnosed Plaintiff with Alcohol use disorder, moderate severity, in early remission (303.90).

34. On February 6, 2021, Martin G. Allen, M.D., diagnosed Plaintiff with Alcohol Use Disorder, recurrent, moderate (F10.20), in remission for 8 months.

35. On March 6, 2021, Plaintiff was arrested by Sahuarita police based on suspicion of driving under the influence of alcohol.

36. On March 10, 2021, Plaintiff submitted a memorandum to Tucson Sector Interim Chief Patrol Agent John Modlin regarding his March 6, 2021, arrest. The same day, Plaintiff submitted another memorandum following up on his fitness for duty.

37. On April 8, 2021, Dr. Morenz diagnosed Plaintiff with alcohol use disorder, recurrent, moderate severity.

38. On April 16, 2021, Dr. Allen diagnosed Plaintiff with alcohol use disorder, recurrent, moderate to severe.

39. On May 12, 2021, Plaintiff graduated from Recovery Ways, an in-patient rehabilitation center for alcohol addiction in Murray, Utah.

40. On August 16, 2021, the Agency proposed Plaintiff for removal from federal employment based on the charge of 'inability to perform the essential duties of your position due to a medical condition.'

41. On or about August 23, 2021, Plaintiff requested a reasonable accommodation. It would take the Agency almost three months to even acknowledge receipt of the request.

42. On September 10, 2021, Plaintiff submitted, through counsel, a written response to the Agency's proposed removal.

43. On October 7, 2021, Plaintiff sent a memorandum to Tucson Sector Interim Chief Patrol Agent John Modlin detailing his recovery and providing an update on court proceedings related to his March 6, 2021, arrest.

44. On October 18, 2001, the Agency re-proposed Plaintiff for removal from federal service based on charges of conduct unbecoming, unprofessional conduct, and failure to be forthcoming.

45. On November 16, 2021, through counsel, Plaintiff submitted a written response to the proposed removal.

46. Also on November 16, 2021, Plaintiff received an email acknowledging receipt of his August 23, 2021, reasonable accommodation request.

47. On November 17, 2021, Plaintiff participated in an oral reply to the Agency's proposed removal with the Deciding Official, Tucson Sector Interim Chief Patrol Agent Modlin.

48. During the oral reply and in the context of addressing and explaining his PTSD, Plaintiff disclosed, among other facts, his experience being ordered by the Agency to clean the blood out of the truck that carried Border Patrol Agent Brian Terry's body out of the field the night he was killed in the line of duty.

49. On December 13, 2021, Plaintiff received an email from DPAIC Hecht inviting him to an interactive dialogue meeting to go over Plaintiff's reasonable accommodation request.

50. On January 5, 2022, the Agency removed Plaintiff from federal service, but held that decision in abeyance pending a decision on whether to accept and sign the Agency's proposed Last Chance Agreement.

51. On January 13, 2022, the Agency held an interactive dialogue meeting with Plaintiff, DPAIC Hecht, and Diane Anderson.

52. On February 4, 2022, because Plaintiff did not agree with the terms and conditions of the Agency's proposed Last Chance Agreement, the Agency removed Plaintiff from federal service.

53. Plaintiff never consumed alcohol while on duty and always arrived at work to fulfill his duties sober.

54. Plaintiff has been clean and sober since March 7, 2021.

**COUNT ONE**
**(Disparate Treatment Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, as Amended)**

55. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth.

56. Plaintiff was disabled as defined by the ADA, 42 U.S.C. § 12102(1).

57. Plaintiff, with or without reasonable accommodation, was able to perform the essential functions of his position or could have performed the essential functions of a position obtained through reassignment.

58. Plaintiff requested a reasonable accommodation.

59. Defendant discriminated against Plaintiff when it generally worsened the terms and conditions of his employment as alleged above, then removed him from federal employment.

60. As a direct and proximate result of Defendant's discrimination of Plaintiff, Defendant removed him from employment, damaging Plaintiff in lost wages, benefits, and other amounts to be determined at trial.

61. Defendant intentionally discriminated against Plaintiff and acted with malice or with reckless indifference to Plaintiff's federally-protected rights.

62. The effect of the allegations in the foregoing paragraphs has been to deprive Plaintiff equal employment opportunities and otherwise adversely affected his status as an employee, because of his disability.

63. As a result of Defendant's discrimination, Plaintiff has suffered damages including, without limitation, emotional distress, mental anguish, and loss of enjoyment of life for which he should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

//

//

**COUNT TWO**
**(Failure to Accommodate)**

64. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

65. Plaintiff is disabled as defined in the ADA.

66. Plaintiff, with or without reasonable accommodation, was able to perform the essential functions of his position.

67. Defendant failed and refused to provide any accommodation.

68. Defendant failed and refused to engage in good faith discussions with Plaintiff to determine the appropriate accommodation(s).

69. Defendant failed to provide Plaintiff any reasonable accommodation, as required under the ADA.

70. Defendant's failure to provide Plaintiff with any reasonable accommodation was intentional.

71. Defendant's failure to provide Plaintiff any reasonable accommodation was malicious and/or done with reckless indifference to his federally protected rights.

72. The effect of the allegations in the foregoing paragraphs has been to deprive Plaintiff equal employment opportunities and otherwise adversely affected his status as an employee, because of his disabilities.

73. As a result of Defendant's failure to accommodate, Plaintiff has suffered damages for which he should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

**COUNT THREE**
**(Retaliation in Violation of Title VII**
**of the Civil Rights Act of 1964, as Amended)**

74. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

75. Pursuant to 42 U.S.C. § 2000e-3(a) it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee opposed any practice that is an unlawful employment practice and/or participated in a protected activity, such as seeking an accommodation for his disabilities.

76. Defendant's actions as alleged constitute discrimination on the basis of race in violation of Title VII, and specifically 42 U.S.C. § 2000e-3(a).

77. As a result of Defendant's unlawful retaliation, Plaintiff has suffered monetary damages for which he should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

**COUNT FOUR**
**(Hostile Work Environment in Violation of Title VII**
**of the Civil Rights Act of 1964, as Amended)**

78. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

79. Plaintiff's workplace was so permeated with the discriminatory acts described above, and the conduct of Defendant and its employees was severe and pervasive such that it created a hostile, abusive, or offensive work environment or unreasonably interfered with Plaintiff's work performance.

80. Defendant is vicariously liable for the actions of its employees in this case.

81.     As a result of Defendant's discriminatory, hostile work environment, Plaintiff has suffered damages including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish and loss of enjoyment of life which he should be compensated in an amount to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. Declare that Defendant violated the Plaintiff's rights under Title VII.

2. For actual damages;

3. For pecuniary and non-pecuniary compensatory damages in a just and reasonable amount;

4. For an Order directing the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described above are eliminated and do not recur;

5. For Plaintiff's attorney's fees, costs, and expenses;

6. For such other and further relief as the Court deems reasonable and just.

## JURY TRIAL REQUESTED

Plaintiff requests that the Court set this case for a jury trial.

DATED this 26th day of June, 2023.

Respectfully submitted,

/s Jeffrey H. Jacobson
**JACOBSON LAW FIRM**
Jeffrey H. Jacobson
*Attorney for Plaintiff*